BARTZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 19—February 13, 1940.*

*John A. Conant* of Westfield, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, *Earl F. Kileen,* district attorney of Waushara county, and *M. S. King,* assistant district attorney, and oral argument by *Mr. King, Mr. Kileen,* and *Mr. Platz.*

WICKHEM, J.   This is the second time that this court has been called upon to review a conviction of plaintiff in error upon charges involving violation of the banking laws.   On July 19, 1938, plaintiff in error was convicted by a jury in the circuit court for Waushara county upon six counts for violation of the banking laws and was sentenced to serve from one to ten years in the prison at Waupun.   This court thereafter set aside the conviction because of the erroneous admission of testimony and ordered a new trial.   *Bartz v. State,* 229 Wis. 522, 282 N. W. 562.   A change of venue was taken and the matter tried in Marathon county on May 8, 1939.   The three counts upon which defendant was found guilty were in substance, (1) that on November 6, 1936, plaintiff in error and one Gibbs, president and cashier,

respectively, of the Coloma State Bank caused to be issued a certificate of deposit to one Wobschal without sufficient funds on deposit to cover it, and by this means falsely embezzled and misapplied moneys of the bank in the amount of $2,667.28 in violation of sec. 221.39, Stats.; (2) that on the same date plaintiff in error and Gibbs made a false entry upon the books of the bank with intent to deceive persons authorized to examine into the affairs of the bank by making an entry upon the books that one Harry Gibbs had a certificate of deposit issued to him in the amount of $1 on November 6, 1935, when in fact the certificate of deposit was issued to Gust Wobschal in the sum of $3,500; (3) that plaintiff in error and Gibbs conspired to issue a certificate to Gust Wobschal in the sum of $3,500 without sufficient funds on deposit in the bank to cover it, and to make false entries on the books of the bank with intent to deceive examiners contrary to the provisions of sec. 348.40, Stats.

Several assignments of error are made, some of which are not argued at all or are not argued in detail by plaintiff in error. The first contention is that as a matter of law the evidence fails to prove beyond a reasonable doubt that an offense has been committed. We have examined the record carefully and think that this assignment is without merit. The evidence in this case is to the effect that the Coloma State Bank was organized in February, 1921, and that plaintiff in error had been its president from the time of its organization. The bank closed January 26, 1935, and reopened February 6, 1935, under a reorganization scheme whereby fifty per cent of the assets of the bank were put into a segregated trust and the other fifty per cent carried as demand deposits by the reorganized bank. It was necessary to secure the consent of ninety per cent of the depositors and creditors to this reorganization plan in order for it to become effective, and it was important to secure the waiver or consent of Gust Wobschal because of the size of his deposit. He ultimately

signed a waiver which recites that he had a certificate of deposit against the bank in the sum of $5,011.67 at the time of the closing of the bank. It appears from the evidence that plaintiff in error and Gibbs experienced some difficulty in getting Wobschal to sign the waiver, and that to induce him to sign they entered into a written agreement whereby they personally guaranteed the portion of his deposit which under the reorganization agreement would be left in the segregated trust. The application of the reorganization agreement caused the Wobschal deposit of $5,011.67 to be split and $2,505.83 carried in the new bank and the same amount in the segregated trust account. A certificate of deposit was properly issued for $1,500 representing a portion of the funds on deposit with the new bank and $73.12 was paid to Wobschal in cash so that his credit at the time of the transaction in question at the new bank was $932.72. With the account in that state, a certificate was issued by the new bank to Wobschal for $3,500. This was $2,567.28 more than Wobschal had in credit or balance with the new bank. This certificate was not properly listed on the books of the bank but was carried in the name of Harry Gibbs in the sum of $1.

It is not questioned that the issuance of the certificate and the entry upon the books constituted offenses against the banking laws. The only question is whether this transaction was wholly conceived and executed by Gibbs, the cashier, who concededly was an embezzler from the bank and who, at the time of the trial, was serving a prison term for criminal conduct in connection with the management of the bank, or whether the scheme was that of plaintiff in error or participated in by him. Gibbs testified to the effect that neither he nor plaintiff in error had the means to guarantee Wobschal's account in the stabilized trust, and that when Wobschal demanded that they make good upon the guarantee, plaintiff in error directed him to issue the certificate of deposit and to make false entries to cover it up. This is denied by plaintiff

in error. We see nothing more in this than a conflict of testimony, and the only question is whether the jury had any right to believe Gibbs. It is true that Gibbs was an absconder and that in minor respects his testimony upon the former trial and upon preliminary examination was somewhat inconsistent with his testimony upon this trial, but we see nothing that as a matter of law renders his testimony incredible, and he was in a measure corroborated by testimony that plaintiff in error was at all times very close to the management of the bank, and by the fact that he as well as Gibbs was personally obligated upon the guarantee to Wobschal of the account in the segregated trust.

Error is claimed by reason of the following instruction given by the trial court:

"This case is an important one,—more important than the average, because it arises under the banking laws which were enacted to safeguard the deposits and property which may in the course of banking be intrusted to the care of state banks by the people generally, and because the defendant has been active in business, not only as a banker but in other ways, and the determination of this case involves his innocence or guilt."

It is contended that this instruction was erroneous because it singled out this case as more important than the average and in effect intimated that the jury had a greater duty to convict than in the ordinary case. This instruction might well have been omitted, but it does not constitute prejudicial error. The instruction is simply to the effect that this is a very important case, (1) to the state because of the great importance which attaches to laws designed to protect deposits, and (2) to the defendant because he has been an active businessman and the case involves his innocence or guilt. The instruction is sufficiently balanced so that a jury is unlikely to have taken from it anything more than that the case, as is undoubtedly true, was important both to the state and to the defendant. Reliance is had upon *Ryan v. State,* 115

Wis. 488, 499, 92 N. W. 271. This involved an instruction which read as follows:

" 'Of course it is not necessary for me to say to you that this is a very important case. On the one hand stands the commonwealth of Wisconsin, demanding that its laws shall be executed, that crime shall be punished; and representatives of the people are asking at your hands a verdict of guilty of whatever offense you may find the evidence to warrant.' "

The court in the opinion said:

"This was a mere general observation, calculated to impress upon the jury the importance of the responsibility resting upon them. It might better have been omitted."

This court held that the giving of this instruction did not constitute prejudicial error. The instruction in the *Ryan Case, supra,* was more calculated to prejudice defendant than that involved here for there was no attempt to balance the instruction by intimating the importance of the case to the defendant.

It is suggested without extensive argument that the court erred in permitting the state to introduce over plaintiff in error's objection a letter from the state banking commissioner to the president and board of directors of the Coloma State Bank in which he directed them not to re-elect Gibbs an officer of the bank, and then to show that while this order had been literally complied with by electing plaintiff in error to the office of cashier, Gibbs had been retained as bookkeeper. We think this was not prejudicial error. The probative tendency of this evidence was not great, to be sure, because it did not include a showing of the precise part played in the matter by plaintiff in error. On the other hand, we are not satisfied that its prejudicial tendencies were any greater than its probative tendencies. With respect to both these assignments of error, it is to be observed that the jury, after long deliberation, acquitted plaintiff in error of the charges contained in three counts of the information.

It is our conclusion that there was no prejudicial error, and that the evidence sustains the conviction. Plaintiff in error has been tried twice for this offense. Two juries have concluded that he was guilty. He has been ably defended and fairly tried, and we see no ground upon which the conviction can be disturbed.

*By the Court.*—Judgment affirmed.